JANUARY TERM, 1882, No. 96.                    MAY 15TH, 1882.

## Long *et al. versus* Long *et al.*

1. Where a conveyance is made upon a trust expressed in the deed, it is a conclusive answer to an allegation of a resulting trust supported by parol testimony.

2. If a man purchase a property and take a deed in the name of one or more of his children, it is *prima facie* an advancement.

3. A. bought real estate and had it conveyed in 1842 to a trustee for the use of A.'s wife, and to his heirs and assigns during her life, and to permit A. to enjoy the rents, issues and profits during his life at the discretion of the trustee, and after the death of the survivor to the children of A. as tenants in common. In 1853 the trustee assigned all his right, title, claim and interest in the said real estate to the parties beneficially interested in it, by a deed reciting the trust. A. survived his wife, and died leaving a will in which he devised the real estate to certain of his children. In a suit in partition by the remaining children against the devisees, the trustee testified that he did not know the deed was put in the name of the wife and children until after the death of A., and that A. said he bought the property for himself. There was testimony that during his life A. claimed ownership, had work done on the property and paid for it, and had the property assessed in his own name and sold some of it.

*Held,* That there was no evidence to change the legal effect of the deed, and that the Court below was right in directing a verdict for the plaintiffs.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lancaster County.*

Partition by John Long, Sarah Long, Mary Shand and Jacob Shand, her husband, Elizabeth Stiffell and Christian Stiffell, her husband, against Susan Long, Catharine Long, Adaline Long, Fanny Free and John Free, her husband, for a house and lot in the city of Lancaster.

On the trial in the Court below, before LIVINGSTON, J., the following facts appeared:

March 29th, 1842. The executors of the estate of Jacob Bundel, deceased, conveyed the house and lot in dispute to John B. Hertzler, trustee, " in trust for the use of Elizabeth Long, wife of Peter Long, and to his heirs and assigns during her life, and in trust also that he the said trustee will allow and permit Peter Long to enjoy the rents, issues, and profits of the same during his life; this to be at the discretion of the trustee, and after the death of the survivor to the children of Peter Long as tenants in common."

Hertzler, the trustee, testified for the defendants, *inter alia :*

" I bought this property altogether for Peter Long; I was in town; I told Long if he don't want this property for his own ; he said yes, I have no money to buy a property ; then said I, well, if you want the property I'll help you to it. . . . That day I came into town and went to Emanuel

*[Long et al. v. Long et al.]*

Reigart, the lawyer, and told him. Then, said I, if a title can be made so that I am safe, I'll buy it. Then Reigart said a title could be made, that I am safe; if Peter Long don't pay it, then the property is mine. Then I told him I'll go and buy it then. He said yes, I can make a title that you are safe; then I bought it; I said nothing, and he said nothing about making a deed; I had confidence that he would make me safe; I mean Mr. Reigart. I told Peter when I went home how I bought the property; he said he bought the property for himself; he bought it for himself but he had no money; I had no conversation after that with Mr. Reigart about the making of the deed as I recollect; I was young then, and didn't know how the title ought to be. I paid the purchase-money to Snyder and Bundel, executors, in the first place; then me and Peter agreed that he would give me bonds; he was paying $75 rent; I said to him if you can pay $75 rent you can pay this property. Then we agreed that he should give me five or six bonds, $75 payable every year; the last bond was more than $75; he was to pay me five per cent. interest; he paid me all those bonds. Reigart in the spring gave me the deed and told me to hold it till Peter paid me all the money; I did so, and when he paid all the money I gave him the deed and also the deed or release of 1853. Peter moved on the property in the spring after I bought the property; it took him ten or eleven years to pay the property."

Cross-examined:

"Before I bought the property I told him to go home and consult his family—his wife and children; he did so; I told him if him and his wife and children would stick together they could soon pay the property; I can't tell where he got the whole of the money which he paid me; he earned part of it with me; I can't tell why the deed was put in the name of the wife and children, in fact I didn't know it was so till after his death; I didn't say the reason it was put in their name was because he was broke up and had creditors; didn't say in presence of Dorsheimer and Brubaker I didn't know he was broke up when I bought it; I don't recollect that Peter Long and I were at Reigart's together until I got the deeds; I didn't know anybody Peter owed money to; the deed was not made as it is to prevent his creditors getting it as I know of."

Re-examined.

"At the times he paid me the bonds he still said now he had a home; he owns it; he always said this. Peter Long could not read or write."

January 3d, 1853, Hertzler executed an assignment as follows :

" Whereas, Jacob Snyder and George Hoover, executors of Jacob Bundel, deceased, by deed dated 29th March, 1842, did grant, bargain and sell unto John B. Hertzler, in trust, for the use of Elizabeth Long, wife of Peter Long, during her life, and in trust also that he, the said trustee, will allow and permit Peter Long to enjoy the rents, issues and profits during life ; and after the death of the survivor to the chil-. dren of the said Peter Long, as tenants in common, a certain house and lot of ground situate at the northwest corner of Orange and Charlotte streets, in the city of Lancaster, as by said deed, duly recorded in the office for recording of deeds in and for the county of Lancaster, in Record Book U, vol. vi., p. 106, etc., reference thereto being had will more fully appear. And whereas, at the time of the purchase of the said premises, the said John B. Hertzler gave to the said executor, seven several bonds of $75 each, for the payment of the balance of the unpaid purchase-money, all of which bonds have been paid by the parties beneficially interested in the premises, and no part of the purchase money has been paid by the said John B. Hertzler. Now, therefore, in consideration thereof, I, the said John B. Hertzler, trustee as aforesaid, all the said bonds being now delivered to me, do hereby grant, bargain and sell, assign, transfer and set over unto the said parties beneficially interested in said house and lot of ground, and to their heirs and assigns, all my right, title, claim and interest in the same."

Elizabeth Long died in 1875. Peter Long died in 1879, leaving a will, in which after giving certain specific legacies he devised and bequeathed as follows:

" As touching all the rest, residue and remainder of my estate, real and personal, of what kind or nature whatsoever, the same may be in the city of Lancaster, aforesaid, or elsewhere. I give and bequeath to my daughters Susan Long, Kate Long, Adaline Long, and Fanny, wife of John Free, share and share alike. . . .

" If 'it is the desire of my four daughters, viz., Susan Long, Kate Long, Adaline Long, and Fanny, wife of John Free, that the real estate of which I may be possessed at the time of my decease shall be sold, then I do order and direct that my said executor shall, as soon as conveniently may be, sell and dispose of the property in which I now reside on the northwest corner of West Orange and Charlotte streets, in the city of Lancaster, to such person or persons, and at such price or prices as may be reasonably gotten for the same, and for that purpose I do authorize and empower my said

[Long *et al. v.* Long *et al.*]

executor to sign, seal, execute and acknowledge all such deed or deeds of conveyance, as may be necessary and requisite for granting and assuring the same to the purchaser or purchasers thereof, and the money arising from such sale or sales to be invested in such manner as my said executor may deem to be to the best interest of my said daughters, viz., the said Susan, Kate, Adaline and Fanny."

*Peter Dorsheimer,* for the defendant, testified, *inter alia:*

" I think in 1873 I bought the lot; the deed was made in 1874. I bought from Peter Long. The ground was at the upper end of this lot now in dispute. . . . I paid him $1200. . . . This is the deed I got from Peter Long and his wife; she signed it too."

" Question. In the negotiations for the purchase of this land, did or did not Peter Long hold himself out as the absolute owner of this lot; and as such did you not contract with him ?"

(The question was overruled, and defendant excepted.)

*George D. Spreeler,* for the defendant, testified, *inter alia:*

" I sold him slate for the roof of that house . . . November 14th, 1862, for $104.25; Peter Long paid it.

" Q. At that time did or did not Peter Long declare the property was his; speak of it as his property ?"

(The question was overruled, and defendant excepted.)

There were other witnesses who testified to having done work for Peter Long on the property, and to having been paid by him. There was also evidence that from 1848 to 1881, inclusive, the property was assessed in the name of Peter Long, and that at one time, about 1850, he offered to sell part of it.

*Mrs. E. Stiffel,* one of the plaintiffs, testified, *inter alia:*

" I had a conversation with Hertzler at his house last spring. Mr. Hertzler said then that the deed was put in the name of the mother and the children, so that the creditors could not take it of him."

The plaintiffs were children of Peter and Elizabeth Long, and claimed under the deed of March 29th, 1842. The defendants claimed under the will of Peter Long.

Counsel for plaintiff asked the Court to charge, *inter alia:*

" 1st. That even if the purchase-money for the property in suit was furnished by Peter Long, the deed for the same of March 29th, 1842, from Jacob Snyder and others, executors, etc., to John B. Hertzler, trustee, rebuts every implication of a resulting trust in favor of said Peter Long; otherwise it would be creating a trust different from that expressly declared in that deed, and therefore the verdict must be for the plaintiffs."

[Long *et al. v.* Long *et al.*]

This point the Court affirmed.

Counsel for defendant asked the Court to charge, *inter alia:*

"2. If Peter Long, now deceased, and through whom these four defendants claim title to the real estate in suit, paid the purchase-money of the real estate, conveyed by deed dated 29th March, 1842, from the executors of Jacob Bundel, deceased, in the manner testified to by Mr. Hertzler, and did so, with the intention of acquiring title thereto, in himself, as absolute owner—and this intention the jury will gather from the whole testimony—then the entire and absolute ownership of said house and lot, etc., in dispute, was in him, notwithstanding and in the face of the language of the deed referred to, giving an interest to his wife, now deceased, and his children ; and this is a question of fact for the jury.

"3. Payment of the purchase-money by Peter Long, upon which he received the deed or paper from John B. Hertzler, dated the 31st January, 1853, and at the same time Hertzler, handing over to him the deed of 29th March, 1842, gave to the said Peter Long the entire and absolute ownership of the real estate in dispute.

"4. If Peter Long, under whom defendants claim, was the owner of said real estate, then he had a perfect right to devise it by his last will and testament and codicil, proved in register's office, 21st day of March, 1879, to the defendants therein named, and this action of partition cannot be sustained on the part of the plaintiffs, and your verdict must be for the defendants."

The Court answered these points as follows :

"2. This point we refuse. There is an express trust here.

"3. This point is refused. The paper of 1853 could not change the deed of 1842. It follows it.

"4. A man of sound mind has always a right to devise any estate he may own to whom he pleases, but under the deed of 1842, and the paper of 1853, he, Peter Long, had no right to convey or devise this property by will."

The Court further charged the jury:

"The plaintiffs allege and say, that they, together with the defendants, hold and own this property as tenants in common under the deed of trust, made in 1842, and they desire distribution to be made among the whole eight children of Peter Long, deceased. While the defendants allege and say, that the property in dispute belongs to them (four of the eight children of Peter Long), having been devised to them by their father, Peter Long, by his will read before you, and it will be for you to say, by your verdict, whether it belongs to the plaintiffs and defendants as tenants in com-

[Long *et al. v.* Long *et al.*]

mon, they being all the children of Peter Long, or to the defendants only, they being four of said children, who claim under his will.

"The case presents a question of law for the Court, rather than one of fact for the jury, depending upon the construction of the deeds of 1842 and 1853.

"It appears that on March 29th, 1842, the executors of the will of Jacob Bundel, deceased, sold and conveyed to John B. Hertzler the property in question, in trust."

\*　　\*　　\*　　\*　　\*　　\*　　\*

"[Here, then, is an express trust; every part of it complete, and set forth on the face of the deed, and we must take it as expressed, in the absence of duress, fraud or mistake at the time it was made, and there is no evidence of either here.] Mr. Long himself took a beneficiary interest under the trust, which he enjoyed while he lived, and there could be no resulting trust. It is argued that the paper of 1853 gave him a fee simple in the land, and he was therefore fully empowered to devise it by will as he did to defendants. We say to you it does not—the deed or paper of 1853 is made to the same parties as the deed of 1842, and Peter Long's acceptance of it was a ratification of the deed of 1842, with the express trust therein. And it gave him no such title as claimed, nor did it empower him to devise it by will, and under the deed of 1842, the property belongs to all the children of Peter Long, deceased (the plaintiffs as well as defendants), and therefore your verdict should be for plaintiffs. The fact of the possession by Peter Long, and improvements made by him, would show nothing as to his intent in the purchase, as he had a life interest therein, and all he did was for the benefit of his children, to whom on his death it came under the deed of 1842. With the title to that part sold off we have nothing to do here. [We have answered as to the law in disposing of the points presented. We look upon it, as we have said, as a question of law for the Court, and therefore we direct you to find a verdict in favor of plaintiffs. There is no necessity for your leaving the box; the clerk will take your verdict. If we are wrong in the view we take of it, the Supreme Court will place us right.]"

Defendant excepted to the answer to the points and to the charge.

Verdict for the plaintiffs, upon which subsequently the Court entered judgment that partition be made.

The defendants then took out a writ of error, assigning as errors the answer to the points, the overruling of the ques-

tions asked Dorsheimer and Sprecher, and those portions of the charge within brackets.

*William R. Wilson,* for plaintiffs in error.

If Hertzler, the alleged trustee, is believed, and his testimony is borne out by the acts of the parties ever since the deed was made, there never was a trust and none intended. There was no occasion for one.

The jury may infer a mistake in the deed: Moore *v.* Dixon, 13 Norris, 53 ; Hays *v.* Quay, 18 P. F. Smith, 263 ; McGinity *v.* McGinity, 13 P. F. Smith, 38 ; Proseus *v.* McIntire, 5 Barbour, 432.

A resulting trust may be shown by parol: Strimpfler *v.* Roberts, 6 Harris, 283 ; Lingenfelter *v.* Richey, 12 P. F. Smith, 123 ; Lloyd *v.* Farrell, 2 W. N. C., 33 ; Houser *v.* Lamont, 5 P. F. Smith, 311 ; Harrold *v.* Lane, 3 P. F. Smith, 268 ; Farrell *v.* Lloyd, 19 P. F. Smith, 239 ; Dennison *v.* Goehring, 7 Barr, 175 ; Sampson *v.* Sampson, 4 S. & R., 329 ; Vanhorne *v.* Frick, 6 S. & R., 90.

*H. C. Brubaker,* for defendants in error.

Where a trust is set forth in the deed of conveyance, which is complete in every part, as in the deed in question, it cannot be varied by oral testimony other than to show duress, fraud, or clear mistake at the time of its execution. A resulting trust is nothing more than a trust arising by inference or implication. It can only arise in the absence of an express trust in the deed: Perry on Trusts, vol. i., s. 24.

Mistake as well as fraud when alleged is never to be presumed. It must always be proven, and the evidence ought to be clear, explicit and unequivocal.

The title of the trustee was irrevocable : Hill on Trustees, 83 ; Harris *v.* McElroy, 9 Wright, 220 ; Ritter's Appeal, 9 P. F. Smith, 13 ; Fellows's Appeal, 12 Norris, 471 ; Dennison *v.* Goehring, 7 Barr, 182.

Long, therefore, had no right to devise the property.

MAY 29TH, 1882.—PER CURIAM: The deed to Hertzler being expressly in trust was a conclusive answer to the allegation of a resulting trust. If a man purchase a property and takes a deed in the name of one or more of his children, it is *prima facie* an advancement, and there was no evidence to change the legal effect of the instrument.

Judgment affirmed.